Filed 5/8/13  P. v. Gonzales CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | F063946 |
| v. | (Super. Ct. Nos. F11600749, F10601961) |
| GEORGE PRENDIZ GONZALES, | **OPINION** |
| Defendant and Appellant. | |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  Hilary A. Chittick, Judge.

Johanna R. Pirko, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*]      Before Poochigian, Acting P.J., Detjen, J., and Peña, J.

On November 1, 2011, in Fresno County Superior Court case No. F11600749 (case No. F11600749), a jury convicted appellant, George Prendiz Gonzales, of two felony counts of possession of heroin (Health & Saf. Code, § 11350, subd. (a)) and two counts of unauthorized possession of a hypodermic needle or syringe (Bus. & Prof. Code, § 4140), a misdemeanor. That same day, in a separate proceeding, appellant admitted allegations that he had suffered a "strike"[1] and that he had served two separate prison terms for prior felony convictions (Pen. Code, § 667.5, subd. (b)).

Also on November 1, 2011, in Fresno County Superior Court case No. F10601961 (case No. F10601961), appellant, pursuant to a plea agreement, pled guilty to second degree burglary (Pen. Code, §§ 459, 460, subd. (b)) and, as in case No. F11600749, admitted one strike allegation and two prior prison term enhancement allegations. One of the terms of the plea agreement was that appellant would receive a sentence covering both cases of five years four months.

On December 5, 2011, the court struck appellant's strike pursuant to Penal Code section 1385 and imposed the agreed-upon prison term of five years four months, consisting of the two-year midterm on the substantive offense in case No. F10601961, eight months on each of the two felonies in case No. F11600749, and one year on each of the two prior prison term enhancements. On each of the two misdemeanors, the court credited appellant with time served.

In case No. F10601961, appellant did not request, and the court did not issue, a certificate of probable cause (Pen. Code, § 1237.5).

---

[1] We use the term "strike" as a synonym for "prior felony conviction" within the meaning of the "three strikes" law (Pen. Code, §§ 667, subds. (b)-(i); 1170.12), i.e., a prior felony conviction or juvenile adjudication that subjects a defendant to the increased punishment specified in the three strikes law.

Appellant's appointed appellate counsel has filed an opening brief which summarizes the pertinent facts, with citations to the record, raises no issues, and asks that this court independently review the record. (*People v. Wende* (1979) 25 Cal.3d 436.) Appellant has not responded to this court's invitation to submit additional briefing. We affirm.

## FACTS

*Case No. F11600749*

*March 15, 2011 Offenses*

At approximately 6:30 p.m. on March 15, 2011, Officer Manuel Chavez of the Sanger Police Department (SPD) was on foot in a park in Sanger, conducting a "[p]atrol check" for "criminal activity," when, from a distance of approximately six to eight feet, he saw appellant, his back towards the officer, "straddling" a park bench and holding a syringe which contained a "brown substance."[2] On the bench approximately six inches from where appellant was sitting was a "rig," i.e., "a combination of tools used to prepare the drug," consisting of an aluminum cap, a piece of cotton and another syringe. There was a "Styrofoam" cup between his legs.

Officer Chavez approached appellant from behind, and when appellant became aware of the officer's presence, he (appellant) quickly dropped the syringe he was holding, placed the aluminum cap and cotton in the cup, and "swipe[d]" the other syringe off the bench. Chavez asked appellant to stand, appellant complied and moved away from the bench, and the officer picked up off the ground the syringe appellant had been holding. Chavez asked appellant what it was and appellant responded, "'You know man. It's heroin.'" The syringe that appellant swiped to the ground contained a brown residue.

---

[2]    Except as otherwise indicated, information in this section is taken from Officer Chavez's trial testimony.

3

A Fresno County Sheriff's Department criminalist testified that he conducted a chemical test of the liquid in one of the syringes, and that the test showed the syringe contained .52 milliliters of heroin. This amount constituted a "usable amount."

*May 11, 2011 Offenses*

At approximately 11:00 p.m. on May 11, 2011, SPD Officer Jeffrey Bise was on patrol in a patrol vehicle when he saw a person "crouched down in [an] alleyway."[3] After initially driving past the alley, the officer turned around, pulled into the alley, got out of his patrol car and shined his spotlight into the alley. At that point, he saw a person, whom he recognized as appellant, walking toward him. There was no one else in the alley.

Bise asked appellant if he had any needles in his possession. Appellant stated, "I might," reached into a back pocket, pulled out a piece of white tissue paper and "said, 'Damn it[,] I do,' or something to that effect." At that point, appellant removed some needles from his back pocket, and Bise had him place them on the hood of the patrol car. Bise then arrested appellant, placed him in the back of the patrol car and walked to the spot in the alley where the officer had seen appellant crouching. There he saw, lying on the ground, a syringe containing a "dark liquid substance."

A police criminalist testified that a chemical test of the substance in the syringe revealed that the substance was .27 milliliters of heroin. He opined that amount was a "usable amount."

Officer Bise obtained a urine sample from appellant. A forensic toxicologist testified that a chemical test of appellant's urine sample revealed the presence of three

---

[3] Except as otherwise indicated, information in this section is taken from Officer Bise's testimony.

chemicals of the opiate class of drugs associated with heroin, including one that "only comes from heroin."

*Case No. F10601961*

The report of the probation officer states, based on information set forth in a Sanger Police Department (SPD) crime report, the following: At approximately 12:30 p.m. on September 22, 2010, the victim, "Robert C. (age 58)" (Robert) left his garage door open while he was in his backyard, doing yard work. At approximately 12:40 p.m., "Miguel O." (Miguel) told Robert that he (Miguel) had seen a person go into Robert's garage and remove a "weed eater" tool.

Robert "immediately began searching for the subject." He "quickly found" appellant, who matched the description Miguel had provided. Robert "noted that [appellant] no longer possessed the weed eater." Appellant told Robert that he (appellant) "had seen someone else take the weed eater."

Robert went home, and found that he was missing some other items, including a "reciprocal saw" and a "Compound Bow."

Appellant was taken into custody on September 23, 2010. On October 4, 2010, Robert "positively identified [appellant] from a photographic lineup."

## DISCUSSION

Following independent review of the record, we have concluded that no reasonably arguable legal or factual issues exist.

## DISPOSITION

The judgment is affirmed.

5